v. Bannis A denial of a motion to dismiss that triggers an agency's settlement policy is a judicially sanctioned change in the legal relationship of parties, rendering the plaintiff a prevailing party under the Equal Access to Justice Act. For those reasons, this Court should reverse the lower court's decision and remain it for further proceedings. Can you explain that a little bit? The Court denies a motion to dismiss, so there's no actual judgment or order requiring anybody to do anything different from there was from the day before the order. The agency, in your allegation, as a practical matter, makes a choice, and maybe they're making this choice as a routine matter to go ahead and give the relief and move the case. But how has the Court, by allowing the case to go forward, changed anything in terms of the parties' legalizations or obligations? Yes, Your Honor. I think it's because the Court's decision is what triggers the agency's pattern of practice and policy. Whether the Court realizes that or not. Buchanan specifically rejected that. It was called the catalyst theory. The motion to dismiss was the catalyst, and the Supreme Court said, on rejecting this catalyst theory, even under a limited catalyst theory, a plaintiff could recover attorney's fees if it's established that the complaint had sufficient merit to withstand a motion to dismiss for lack of jurisdiction or failure to state a claim. This is not the type of legal merit that our prior decisions, based upon plain language and congressional intent, have found necessary. That's exactly what you're arguing to us. You're saying, we survived the motion to dismiss where Judge Ammon said we have a plausible claim for unreasonable delay, and that's altering the relationships. And the Supreme Court has said no. I think the difference between this case and Buchanan, Your Honor, is that in Buchanan, Justice Rehnquist noted there was no empirical evidence that there was any sort of mischievous defendant's issue. Right. You're arguing that because they have a pattern of doing this, that that should be some exception to the rule that I just cited. I would suggest that it's a policy they have. And what is the evidence of that policy? I mean, if you haven't brought, I can imagine a class action suit on behalf of people who, whose claims have been delayed and who claim that there's some sort of due process violation, that they refuse to move on these applications until a lawsuit is brought. I can picture that, and there would be discovery on the question of the pattern and the, what is the evidence that, as opposed to the gut feeling that there's a mischievous defendant problem here? Your Honor, the only evidence I could get is what we cited in our brief here, which is a list of cases where the same agency is engaged in this identical conduct. Every time they lose a motion to dismiss, they either enter an agreement settling it, or they don't enter into an agreement and as a matter of fact, just settle it out. And as a matter, within those cases, do we see this timing issue where we have the request for further information issued by the agency prior to the motion to dismiss ruling? Because I thought that was interesting here, that the agency has not, is left just sitting on the case until after the motion to dismiss ruling. Is that part of that pattern, that they continue to adjudicate the motion or the application while the motion is pending? Your Honor, I would suggest that the request for evidence here came after the argument. Right. Where it was... The writing was on the wall. The writing was on the wall, Your Honor. Yes. And so with the list of cases that I've provided, I should note, those are just my cases. If I had the opportunity to do very limited discovery to find out how the agency has behaved when they've lost... Let's assume you have a pattern. Let's go back to Justice Rehnquist because we have to listen to what the Supreme Court says, right? So they did go... He went through the policy reasons, right? Mischievous defendant that you're talking about. And he's not convinced because there's no empirical evidence that that's what's going on. He said even if there's injunctive relief, which is what this is about, the mischievous defendant isn't going to necessarily just wait because maybe under the mootness doctrine, it won't be moot because it's recurring. So that would be a risk they would be taking. But then he says this, okay? This is what he says. Given the clear meaning of prevailing party in the statute, we need not determine which way these various policy arguments cut. And he talks about Congress doesn't give roving authority to judiciary to deem what it thinks... To disregard the clear legislative language and the holdings of our prior cases on the basis of such policy arguments. So he rejects this idea that even if you could empirically establish that this is going on, that because the plain language doesn't go your way, the court still can't do it. Your Honor, I would point out that Buchanan also does go through the legislative history because Justice Rehnquist recognizes that while he uses the term clear plain language, he also says there's ambiguity because at the time of Buchanan, the majority of circuits did accept the catalyst theory. And so I would suggest what you just read indicates that it was not decided upon in Buchanan. And again, this court's decision in Ma, which applies Buchanan to the Equal Access to Justice Act context, what we have to show is a judicially sanctioned material alteration of the legal relationship of parties. But Ma, there was an order to show cause that was the same argument you made that you're making here. I mean, it wasn't a motion to dismiss, but it was an order to show cause. And they settled it. They adjudicated it. So I don't see a big difference. What's the difference? So in Ma, it was an actual denial. And they challenged the denial of a green card application, an adjustment status application. The agency within their 60-day response period reopened and approved it. And so there was no motion to dismiss before the relief was granted. Here, like in delay cases, which are unfortunately becoming much more common throughout the federal judiciary, this is what the agency does. They file form motions to dismiss throughout the country, regardless of the benefit type that's delayed. And then if they lose the motion to dismiss, they issue the decision. And it drives the costs up for plaintiffs significantly. And they have no disincentive to not clog the courts with these motions to dismiss. So how do we separate whether this is mischief or we'll call it overwhelmed agency conduct? So, right, we deal with immigration cases. In the trial court, I dealt with a lot of Social Security cases. And you see this. We think, we've gotten to this point already, and now you're doing the voluntary remand is what happens in Social Security, right? Nobody ever argued to me, and it didn't occur to me that that was mischief. It seemed to me to be an overwhelmed agency. So how do we, because there is this case law that says we're not going to have a separate, not even a mini-trial, it would almost be a maxi-trial on the question of the intent, right, of the agency doing this. And again, I can see a separate lawsuit. But how do we differentiate that without going off on a tangent that overwhelms the underlying case itself? Yes, sir. And my time is up, if I may answer your question. So first off, I want to make clear, the word mischief comes from the Buchanan case. Yeah, yeah. I know you're not accusing anyone. No. And when I used to be a DOJ attorney, I would advise my clients the same thing. Hey, if you settle the case now, you don't have to pay fees. A good attorney tells their client, stop the bleeding. The second thing is, I think there's either a policy or there's not, right? And in the cases you're talking about, the class action. Do we think that if we had sort of, not just limited, but incredibly narrow discovery on this question, that you could ask the question, is there a formal or informal policy of failing to proceed with these until after a motion to dismiss is denied? That that's what you think would answer the question? I think so. And I think it would have to be a second question of, show us what has happened in the cases where the motions to dismiss have been denied. Well, that's a much larger question. The question of, is there a policy? Because the answer is probably going to be no. And that's why you need the second question, right? Because there's not a memo, presumably. That's what I'm saying is it's very hard to figure out how to do that in a discreet way in the context. And we have a lot of case law saying you can't have a separate trial on the question of the intent of the defendant. I agree with that, Your Honor. But there is consistent case law that says there can be discovery for EGIP purposes. And again, I'm not suggesting we get full Rule 33 in inauguratories and all the rights in Rule 26. But Judge Ammon would decide, okay, here's what's appropriate for these circumstances. Go do it. It'll take 30 days. Maybe it only takes one 30B6 deposition. That's three hours. And we're done. So I don't think it's a full trial. And what exactly is that going to show? In your best case scenario, what's it going to show the policy is? That the agency will fight a case to a motion to dismiss. And if they lose, they will resolve a delay case. Again, we're talking about unreasonable delay cases. I know, but if they have too many cases and they can't resolve them, but when there's a lawsuit, a lawyer or someone from the agency focuses on the case and it then gets more attention. I don't know. Is that mischief or is that just an overwhelmed bureaucracy? Or does it not matter whether it's what the intent is? Is that your claim? That's my claim is that if they have this policy and the order on the motion to dismiss, triggers that policy, then the order on the motion to dismiss is in fact, a judicially sanctioned order that's materially altering the relationship between the parties, because only that motion to dismiss triggers the settlement policy. And then we get the decision. Thank you. Good morning. I'm Arnie Nelson, Assistant U.S. Attorney in the Eastern District of New York. Just a couple of things, Your Honors. One is that this was not a settlement. There was an application that was awaiting adjudication, and then that application was adjudicated. So, calling this a settlement is not even as in Ma, where there was actually a denial and then change of position. This is, as Your Honors have recognized, a situation of a lot of applications before an agency, and that is working through the applications. And the other thing is that, yes, it's not surprising that the mischievous defendant language is in Buckhannon, because Buckhannon, the opinion uses it in saying like, we're not impressed with your theory. So, it's not as if the policy arguments raised by an appellant in this case are some kind of new twist on Buckhannon. They were expressly rejected in Buckhannon, in Ma, and also by the district court here. And by the way, the district court here, the same district court that denied the age of fees is also the one that denied the motion to dismiss. And yet, that same district court said, I, there is no, this is the same district judge, Judge Ammons, was on the case throughout. And she, you know, if anyone knows whether there was a judicially sanctioned agreement here, she would know, because she was the judge throughout. And she said no, and she said, even if you have this policy, even if there's this policy that you allege, that's not going to change the fact of what Buckhannon and Ma have held, that you have to be a prevailing party and what the standard is. And just bringing in some policy arguments, which frankly have been rejected by the Supreme Court, by the Second Circuit, by the district court in Ma, is not something new. It's something that's been rejected. And you don't, and I would also say that you don't get to get age of fees in this case based on what you allege was happening in other cases. It's also not the case that these motions to dismiss have always been denied. In fact, in Da Costa, which is cited in our brief, this same kind of complaint alleging an unreasonable delay based on the same exhibits, apparently, that are attached to this amended complaint, was one, it was granted by the district court, and it was affirmed by the D.C. Circuit. Does the agency, maybe you don't know the answer to this, but I'm going to ask it anyway, does the agency ever move forward on these claims prior to any motion to dismiss being filed? I know there was a request for evidence here, but the argument is that the writing was on the wall here because of the oral argument. So are you aware of the agency, when the lawsuit is filed, looking at the lawsuit saying, oh, this has been sitting a long time, we're going to, or not? I can't really comment on that. I will say that, you know, there's some cases, presumably, where the agency acted without a lawsuit ever having been filed. The lawsuits are filed when something isn't. I know, but I'm suggesting to you, you know, I posited this idea that there's an overwhelmed bureaucracy, but when a lawsuit gets filed, they look at the case. But if, in fact, they wait until there was a motion to dismiss, that's not a great look for the agency. You would think if they, it was brought to their attention, based upon the lawsuit, that they wouldn't necessarily make the litigant go through a motion to dismiss before they try to do something with it, now that it's, you know, they've been alerted to it. Does that make sense? Yes, John, I can't comment on every single situation. I think that when a lawsuit is filed, obviously, the U.S. Attorney's Office agency has to look at that. But they also have to look at people who didn't file lawsuits and have been waiting as long. So I think it's a situation. I think when a motion to dismiss is made, and again, I can't speak to every case, I think there are considerations, like, has this been a long time? Can we resolve it without filing a motion to dismiss? You know, what are the other factors? So I would say that, again, I cannot point to a specific situation, especially when it comes to these EB-5 visas, but I would say that I have no reason to think that in every single case that a lawsuit is filed, that the agency necessarily waits to go. Because in the other context, Judge Miriam mentioned social security case. A lot of times, if the lawsuit's filed in a social security case, the district court judge would get a stipulation of remand from the government because somebody's not looked at the case, and they don't necessarily wait to see what the judge is going to do, right? Well, I think a social security case is, I would say in general, these are unreasonable delay cases. This is not where there's actually been a determination that somebody is or is not entitled to a benefit. It's more than it's taking a long time in the plaintiff's view. In social security cases, when they're filed, there's usually been a denial, like a statement. But they're effectively denied relief by the delay. So, just in this case, you have a complaint, initial complaint, which, as Judge Bianco is referencing, puts this on the radar of the agency to the extent it wasn't. So, that's September 2020. We have an initial complaint. A whole bunch of stuff happens in the district court. We get an amended complaint in June 2022. So, 21 months later, and at that point, still no further follow-up for information. We don't get the request from the agency sort of following up on the application. It's not triggered by it getting on the top of someone's desk from the filing of the complaint. It's not even triggered by the filing of the amended complaint or the filing of the motion to dismiss. We don't get a request for more information in the record until after the oral argument. It's hard to put this in the category of overwhelmed agency that just has to triage somehow, and one way it triages is what gets litigated, when even after litigation starts, it's I think that 26 months. I don't know. Math is hard. But it's more than two years before they ask for more information. How can that be not in response to the motion to dismiss issue? Well, and I would say for one thing, that was actually, that was a period of time after the filing of the complaint, and before the filing of the amended complaint, when the whole program had to be reauthorized. So, and there was an agreed upon stay, and then the program was reauthorized, and then the amended complaint was filed. And there was, I will not say that certainly the filing of a lawsuit does trigger attention, but how that plays out really has to be viewed. You can't just, you know, say like, oh, you find a lawsuit, so you go to the head of the line. So I think there's a process that's undertaken, and I will, I don't think it's, I think, and again, I can't speak to every single case that's filed, but based on other types of cases, I think there's a consideration, you know. Some people may wait a long time. Some people may wait two days. You have to consider what else is going on, what the agency says, and it's, so there are factors that have to be considered. And the bottom line is, this is not about that. He has gotten his relief. This is about him saying, I'm entitled to attorney's fees because I got the relief. And that's what this case is now about. He did get the relief. And as the court has questions, I will rest of the arguments. All right, thank you. Ms. Nelson, Mr. Banish, you have three minutes in rebuttal. Thank you. Thank you. Can I ask you, before you jump in, your evidence for identifying a pattern of practice? You obviously do these kinds of cases a lot. You had a long list of cases where they granted relief or settled one way or the other after the motion to dismiss was denied. If we asked you to look through all your cases and see whether there was a list of cases in which relief was afforded or settlement or whatever was resolved after the complaint was filed, but before the motion to dismiss, would there be any cases on that list? It would be a much longer list, Your Honor. Much longer list? Absolutely. So doesn't that undermine the notion that there's a pattern of waiting until after the motion to dismiss is decided? Let me clarify my answer. The agency, I would say 70 to 80 percent of my cases after we file the complaint resolve without a motion to dismiss. However, every time there's a motion to dismiss, the settlement depends on the outcome of that motion to dismiss. My colleague mentioned DaCosta. That's one of my cases. In that case, we lost the motion to dismiss up in the District of Columbia, so they didn't settle. We appealed. We lost the appeal, so they didn't settle. I know, but what your experience has told you, just to follow up on that, and this gets to some of our other questions, is there's no suggestion based upon your own experience that they have this policy of never, even when the lawsuit is filed, don't even look, we're not going to look at these. We'll see what happens on the motion to dismiss. If we lose the motion to dismiss, then we'll move it up the line. That's completely inconsistent with your own experience because you just said in 80 percent of these, right, they resolve it even before the motion to dismiss. I guess I think the ones that resolve without a motion to dismiss are irrelevant to the question of whether they have a policy that when they file a motion to dismiss and they lose it, whether they will settle. It actually makes my job very difficult because it's hard to predict which cases they're going to file a motion to dismiss on because it's not related to the age of or the length of the delay. This was a four-year delay, and they settle cases that I file after 90-day delays. Different benefits, admittedly, but this motion to dismiss policy is in practice very real, and I'm not the only attorney who sees this. I'm just, I can only cite to my own materials because I don't have the opportunity to do discovery. And I will say, I think that this policy is what makes this case different than Buchanan and Ma. This is, I'm making a very narrow argument. Keep in mind, even if this court reverses it for further proceedings, under the Equal Access to Justice Act, the government has abilities to argue there's special circumstances that exist why fees should not be appropriate in this case. And even if we are considered a prevailing party, I fully expect them to make the same arguments that Your Honor, Judge Merriam, that you mentioned. Hey, we've issued the RFE before the decision, and then Judge Amman will get the opportunity to opine on that. And so this is not, if we win here, we get some sort of windfall. We still have a lot of heavy lifting to do. We just want the right to do that. And because the motion to dismiss here triggered the agency's policy, we believe, distinguished from Buchanan and Ma, that that is a judicially sanctioned alteration of the party's relationship, and I appreciate y'all's time this morning. Thank you, Your Honor. All right. Thank you both. We will reserve the